FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 2 0 2019

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID HAROLD HANSON,       )
                           )
            Plaintiff,      )
                           )
v.                         )        Case No. 1:19-cv-01124-KK
                           )
FORREST FENN,              )
                           )
            Defendants.     )
_____)

## MOTION OF BRIAN ERSKINE TO INTERVENE AS DEFENDANT AND MEMORANDUM IN SUPPORT

Brian Erskine ("Applicant") respectfully moves this Court for leave to intervene

in this action as of right, pursuant to FED. R. CIV. P. 24(a)(2) ("Rule 24(a)(2)") or,

alternatively, in permissive intervention pursuant to FED. R. CIV. P. 24(b) ("Rule 24(b),"

jointly "Rule 24").  As grounds therefor, Applicant states:

1.     The Motion to Intervene ("Motion") is timely because the litigation is in its early

       stages.  Intervention will not create delay and will not prejudice existing parties.

2.     Applicant has a substantial legal interest in the subject matter of the action

       because Applicant has solved the notorious Forrest Fenn treasure quest[1] ("quest")

       referenced by David Harold Hanson ("Plaintiff"), has visual proof ("proof") of the

       solution exhibited in the Memorandum in Support ("Memorandum"), and has

       composed lengthy, detailed documentation of the solution ("documentation").

[1] For context, see Burnett, John; *NPR*, March 3, 2016, https://www.npr.org/2016/03/13/469852983/seeking-adventure-and-gold-crack-this-poem-and-head-outdoors

Documentation includes work published online (https://fennsolve.com), work bearing registered Federal copyright (registration number TX 8-761-090), and a draft article submitted in November 2019 for prospective publication in a monthly periodical which has reported on the quest, which has presented Defendant with its annual award in the context of promoting or affirming quest value, and whose theme is the regional heritage of the American West.

3.    Plaintiff claims that Forrest Fenn ("Defendant") made "fraudulent statements" and expressed "misleading clues" with respect to the quest.  Applicant states that substantively all such "statements" and "clues" are demonstrably true, as shown by conclusively indicating or converging upon a uniquely and objectively conclusive solution ("solution") at a specific location validated by proof and documentation fully decoding the quest including the whole of a cryptic poem of six stanzas and 24 lines ("poem") composed, published, and presented by Defendant as fundamental to the quest.  Applicant relied on Defendant's statements, direct clues, and indirect clues to find the solution, presupposing their truth and subsequently validating.  Pursuant to Local Rule 7.5 limiting the length of motions, Applicant envisages that this documentation would be presented in discovery on the merits.

4.    Disposition of the action without participation of Applicant may impede significant interests in the perceived integrity of the quest; the intellectual property, publication value, or other solution value including tangible reward; or future value possibly deriving from those interests.

5.    Applicant's interests are not adequately protected by existing parties to the litigation.  Presumably, Defendant and Applicant would align that Defendant has made true statements and representations.  However, Defendant as quest creator has demonstrated a sustained interest in its mystery or in perpetuating the quest, while Applicant as quest solver has an interest in exposing its true solution or in ending the quest.  This conflict suggests that Applicant might be more amenable than Defendant to refuting claims of Plaintiff by openly disclosing the solution and its proof and documentation, thus protecting value to Applicant while promoting safety objectives defined by authorities as detailed below.  Also, Defendant is quoted as having stated that "The person who finds the treasure will have studied [...] and thought, and analyzed and moved with confidence."[2]  By this Motion, Applicant aims to identify as having solved the quest by study, thought, and analysis, and as Movant to satisfy any requirement of Defendant, who in the literary context of the quest uses words flexibly, to have confidently so "moved."

6.    Applicant also satisfies requirements for permissive intervention because its claims plainly have questions of fact in common or congruent with those pertaining to the veracity of Defendant and the quest, as at issue in the action. Plaintiff's broad claims, suggesting by informal interpretation that the quest is "rigged" or tantamount to an elaborate, decade-long hoax deceptively perpetrated by Defendant, indicate that these questions of fact are co-extensive with the totality of the quest including any or all of its particulars as detailed in documentation.

---

[2] Kile, Jenny; interview with Defendant, February 4, 2013, http://mysteriouswritings.com/six-questions-with-forrest-fenn-author-of-the-thrill-of-the-chase/

Applicant's unique, comprehensive readiness, as the demonstrable quest solver, to address questions of fact raised by Plaintiff supports permissive intervention.

7.   Applicant affirms never having directly mutually corresponded with Defendant or Plaintiff before the date of filing of the action and never having received privileged consideration or favor from Defendant in any meaningful form.  Applicant has, and has had, access only to public information about the quest and to the results of Applicant's own work.  Applicant denies Plaintiff's claims that information provided by Defendant was "conflicting and misleading," "knows" Defendant only as a remote public figure, denies having "found" any "items" of monetary or tangible value, and denies having realized any benefit of significant monetary or tangible value through any privileged relationship with Defendant or otherwise despite having solved a quest Defendant consistently represented as offering such value, including details of specific items, as a direct or natural result of its solution (by Applicant) within the clear context of Defendant's public statements.

8.   Applicant has shown alignment with public safety by contacting, and mutually and at length conferring with, whether in person, by email, or by telephone, so as to present the quest solution, proof, and documentation; senior officers of the New Mexico State Police, Gallatin County Sheriff in Montana, and other authorities who have publicly communicated an interest in or desire for an end to the quest or a reduction in its risks, as detailed below.  These actions show Applicant's commitment to citizenship and sustained interest in comprehensive quest value.

4

9.    Pursuant to Local Rule 7.1(a), beginning on December 6, 2019 Applicant initiated communications by multiple means with Plaintiff and Defendant concerning this Motion.  On December 9, Defendant stated by phone *inter alia* that he had forwarded this Motion to Defendant's counsel ("counsel"), did not reveal the identity or contact details of counsel, and directed Applicant to wait for counsel's response.  On December 10, in response to a specific question asked by Defendant, Applicant contacted Defendant by email courteously suggesting an informal meeting.  Defendant replied that Defendant would await service before engaging with respect to the action including this Motion.  As of December 17, Applicant had received no such communication from counsel and thus respectfully and logically interprets Defendant's position to be that Defendant has no response to this Motion, pending its service or some other events, other than as counsel might provide or direct.  On December 16, Plaintiff communicated by phone that Plaintiff opposes this Motion.  Pursuant to FED. R. CIV. P. 5(b)(C) and (E) and provisions of Local Rule 5, Applicant will serve this Motion to Plaintiff and Defendant by filing with the Clerk of the Court via the CM/ECF system and by certified mail at the addresses found on the form filed to initiate the action.

10.    In support of this Motion and pursuant to Local Rule 7.3, Applicant respectfully directs the Court to the following Memorandum, attached hereto and incorporated herein by reference.

5

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### I.      INTRODUCTION

The quest, as publicly detailed, is a complex outdoor adventure puzzle created by Defendant for any intrepid person(s) to solve.  Defendant has notoriously represented that quest solution, involving discovery of a secret site in the Rocky Mountains by decoding a cryptic poem amid other clues and context as described above, bears or entails significant reward of tangible value fitting the common definition of treasure (a box containing gold, gems, artifacts, coins, etc., or "box").  These representations by Defendant have not been abstract or generic, repeatedly extending to public itemization of box contents.[3]

Applicant has decoded and solved the quest, presents proof below in the form of a visual image ("visual") and brief summary narrative, and affirms having created, as described above, comprehensive documentation envisaged to be presented in discovery on the merits.  This proof or visual created by Applicant overlays or superimposes two images, merging them.  The first image is of a drawing by illustrator Allen Polt ("Polt drawing") found in the epilogue of a book authored by Defendant ("memoir") and published in January 2010 as *The Thrill of the Chase: A Memoir*,[4] in which the quest puzzle and poem were introduced.  The second image is a photograph ("photo") taken by Applicant in August 2018, in the San Juan Mountains of Colorado at coordinates (37.986555, -107.647828), capturing the precise location of the secret solution ("site").

---

[3] Boggs, Johnny D.; *True West*, November 2013, https://truewestmagazine.com/article/modern-day-treasure-hunt/; also Frick-Wright, Peter; *Outside*, August 11, 2015 https://www.outsideonline.com/2005391/hunt-americas-last-great-treasure; also Goldsmith, Margie; *Forbes*, July 1, 2018, https://www.forbes.com/sites/margiegoldsmith/2018/07/01/hello-world/#412dc27b39ac

[4]  Published by One Horse Land & Cattle Ltd. Co., January 1, 2010.  ISBN 9780967091785.



7

The evident match proves that Applicant both correctly decoded the poem and solved the quest as detailed in documentation.  The site is found between the towns of Silverton and Ouray, near U. S. Highway 550 ("Million Dollar Highway") and Ouray County Road 18; below the northernmost peak of Brown Mountain ridge, or Abrams Mountain; on the isolated west bank of the Uncompahgre River across from its junction with Climax Creek, bounded by mountainside and river, at altitude of 9,000 feet above sea level.

Documentation details other key references and markers as clued by the poem and by Defendant's public statements and representations.  These include references to the Colorado state seal and its unique graphics as confirming site accuracy, the Colorado state motto,[5] the epic quest of Aeneas in the classical *Aeneid* of Virgil, and Hollywood films including *National Treasure* (2004) directed by Jon Turteltaub and starring Nicolas Cage.  Other markers include identifying the Uncompahgre River as "warm waters" by translation from the Ute language, Lake Como near Silverton as "where warm waters halt," Brown Mountain peak above Lake Como marking the eponymous ridge as the "home of Brown" or source of Cement Creek flowing through Silverton, and several "blazes" including an autumn panorama of aspen trees featured online by the Colorado Department of Transportation, conspicuous waterfalls, and two particular rock-lined, tar-coated campfire pits the more remote of which marks the vantage point of the photo.[6]

In the memoir, the Polt drawing is found on a page below the chapter title "Epilogue," centering under its middle letters "log."  This relative juxtaposition creatively

---

[5] Applicant's reply to Defendant's "Nothing without the deity" (Colorado) is "God enriches" (Arizona).  See note 20.

[6] Such references are collated and are envisaged to be presented in documentation in discovery on the merits.



*In both images,
the location of a hidden
treasure is pinpointed*

validates Defendant's explicit suggestions to turn over or to look under a "log" as a quest

activity.[7]  Both those suggestions and that juxtaposition combine to suggest that to prove

the solution, another image may need to be matched to, or fitted under, the Polt drawing.

Logically, the correct image might be inferred to be an outdoor photo of the site to which

the poem directs.  Aspects of the Polt drawing, including felled trees, a man holding an

ax, and site topography as detailed in documentation also connote the 1794 Battle of

Fallen Timbers and its historic context as the first victory of the U. S. Army and of the

Indian Wars.  Reference to this battle, fought in the Great Black Swamp, a forested fen

near Lake Erie along the Maumee River in the Northwest Territory, later Ohio, validates

Defendant's notorious allusion to Toledo[8] while evoking Defendant's valorous military

---

[7] Citations are collated and are envisaged to be presented in documentation in discovery on the merits.

[8] Mills, Lorene; interviewing Defendant, May 13, 2011, Santa Fe, N. M. local television, at roughly the 10-minute
mark as featured at https://www.youtube.com/watch?v=hbqC--RV2Ww; additional references in documentation.

service and interest in history including themes of Manifest Destiny or "how the West was won." The figure "45°" found in the starry sky of the Polt drawing centers above the slope in the photo, labeling its conspicuous angle and that of rock layers behind, virtually forming a big "X" that "marks the spot."[9] The slope connects the man at lower right and the moon, bird (dove), nest, and turtle head behind the bird at upper left, or figuratively "man" and "nature." Documentation details further metaphorical meaning including references to the surname of Jon Turteltaub ("Turtle Dove"), director of the film *National Treasure*; Chief Ouray "the Peacemaker" of the Utes on whose ancestral land and near whose namesake town the site is found; and Chief Little Turtle of the Miami whose war was decided, and whose "treasured" land was lost with that of allies including the Wyandot led by Chief Tarhe the "Crane" or "Tall Tree," at Fallen Timbers.

The visual is tantamount to the quest solution, alone sufficient to validate or to prove the quest solved. It is a work of conceptual art available to any site explorer, manifesting a relationship of mental association or optical co-projection between the Polt drawing and the ground or earth only when viewed from the vantage point captured in the photo, emerging as a vision perceived or realized by a combination of experiential quest immersion, persistent and thorough site exploration, aesthetic reflection, creative imagination or "seeing in the mind's eye," and perhaps the healthy frustration of a worthy challenge.[10] This virtual art installation or metaphorical "treasure" will remain, while natural conditions permit, fixed at the site. Given Defendant's art career, pursued after

---

[9] Also, in the poem of 166 words, every 45th word — the 45th, 90th, and 135th — reads as: "walk down now."

[10] Broadly similar, popular visual puzzles with identification and visualization solutions include "*Where's Waldo?*" and "*Magic Eye.*" Also, natural landscapes inspire representational art, mythical reference, and navigational reference, often in combination, and have for the whole span of human history.

completing military service, the visual and its contexts are congruent with Defendant's

life events, identity, and self-presentation.  Landscapes inspire art.  With the memoir

containing the Polt drawing published in 2010 and the photo taken in 2018, the visual

match "reverse engineers" the quest by connecting the art back to the landscape, proving

that Defendant commissioned the Polt drawing before 2010 only after having visited the

site of the photo for the clear purpose of creating the quest introduced in the memoir.[11]

Applicant has searched the small, closely bounded, wooded site, perhaps one acre

in extent, including a waterlogged area of soft, peaty soil or a "fen in the forest" again

evoking Defendant's name, exhaustively with tools including a metal detector, finding

nothing of tangible value.  Applicant presumes Defendant to have concealed a box at the

site only metaphorically and for any such box actually to have remained in Defendant's

secure custody elsewhere,[12] culminating a series of integrated, devious choices by

Defendant in structuring the quest in a way Applicant has shown to be substantially

honest with respect to its clues and to Defendant's statements when properly interpreted;

wisely avoidant of the foreseeable, significant risks and uncertainties inherent in actually

abandoning a valuable box in the outdoors; and finally disentitling as a demanding test of

character or grit, requiring the solver (Applicant) to overcome an inevitable failure or

baffling twist by Defendant's shrewd design just as and where the box might be expected

---

[11] Communication between Applicant and Polt's wife earlier in 2019 suggested that Polt was unaware of Defendant's secret purpose in commissioning Polt's drawing, or that Polt made the drawing based on instructions provided by Defendant but disconnected from the quest context.

[12] For independent public confirmation that a box exists and an indication that it may remain in Defendant's secure custody — hidden altogether elsewhere, away from the site of the visual — see article quoting both author Doug Preston and an oddly *anonymous* "noted New Mexico archaeologist contacted for this story" who perhaps is Defendant himself.  Burnett, John; *NPR*, March 3, 2016, https://www.npr.org/2016/03/13/469852983/seeking-adventure-and-gold-crack-this-poem-and-head-outdoors; for a partial bibliography of Preston featuring archaeology see https://santafeworkshops.com/instructors/241/

to be found — an intentionally inflicted adverse experience just as and where any tangible reward of quest success might seem most imminent.[13]  Applicant presumes that the final line of the poem, "I give you title to the gold," is literal, suggesting that Defendant envisages not a self-validating outdoor box find but alternatively a voluntary transfer of box ownership by execution of a legal deed.  Defendant thus would retain control of the quest[14] and with it, *inter alia*, control of his autobiography as reportedly included among box contents[15] and in which Defendant presumably has priority interest as a personal and literary legacy.

---

[13] Blumberg, Yoni; *CNBC*, April 18, 2018; Defendant: "No one knows where that treasure chest is but me."  (See note 11).  https://www.cnbc.com/2018/04/17/millionaire-forrest-fenn-hid-treasure-in-the-rockies-and-left-a-clue.html

[14] Both redundant emphasis on control and refusal to abandon a valuable asset in remote woods might be reasonably consistent with the character and life events of Defendant, a retired Air Force combat pilot once shot down over Laos, a wooded, mountainous land with which Applicant is familiar by work and travel but that most Americans regard as remote.  Referencing Chief Tarhe "the Crane" of the Wyandot as described above, during the Vietnam War the American military used the Sikorsky CH-54 "Tarhe" heavy helicopter or aerial crane to help recover downed aircraft and pilots.  For Defendant's service details, see https://supersabresociety.com/biography/fenn-forrest/

[15] Glum, Julia; *Money*, June 17, 2019, https://money.com/money/longform/theres-a-treasure-chest-worth-millions-hidden-somewhere-in-the-rocky-mountains-these-searchers-are-dedicating-their-lives-and-savings-to-finding-it/

## II.      ARGUMENT

***References below to decisions and precedents of other Federal circuits respectfully are held to apply to the jurisprudence of the Tenth.***

### A.      Applicant Satisfies the Requirements for Intervention of Right

Rule 24(a)(2) provides that upon timely application, anyone shall be permitted to intervene in an action:

> When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302-03 (11th Cir. 2008) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)); *see also Stone v. First Union Corp.*, 371 F. 3d 1305, 1308-09 (11th Cir. 2004).

Applicant's request for intervention satisfies the requirements of Rule 24(a)(2) for intervention as of right.  Applicant has a substantial legal interest in the subject matter of the case because the claims of Plaintiff, by directly questioning Defendant's veracity, also by extension question or cast doubt upon the veracity of, and undermine the possibly significant tangible and intangible value of, the related work performed by Applicant, the time and effort invested, and the written and visual results, a portion of which also bears registered Federal copyright.  Applicant is timely in seeking to intervene, as the case is still in its early stages, and its intervention will not disrupt the proceedings or prejudice either party.

13

1.      **Applicant's Motion to Intervene is Timely**

The Eleventh Circuit has identified several factors relevant to determining

whether a request for intervention is timely:

> (1) the length of time during which the proposed intervenor [applicant]
> knew or reasonably should have known of the interest in the case
> before moving to intervene; (2) the extent of prejudice to the existing
> parties as a result of the proposed intervenor's failure to move for
> intervention as soon as it knew or reasonably should have known of its
> interest; (3) the extent of prejudice to the proposed intervenor if the
> motion is denied; and (4) the existence of unusual circumstances
> militating either for or against a determination that their motion was
> timely.

*Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002) (quoting

*Chiles*, 865 F.2d at 1213).

The Supreme Court has emphasized that "[t]imeliness is to be determined from all

the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). The Eleventh Circuit

has also recognized that the requirement of timeliness "must have accommodating

flexibility toward both the court and the litigants if it is to be successfully employed to

regulate intervention in the interest of justice." *U.S. Army Corps of Engineers*, 302 F.3d at

1259 (citing *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970). In

*Chiles v. Thornburgh*, a motion to intervene was held to be timely when "filed only seven

months after [plaintiff] filed his original complaint, *three months after the government*

*filed its motion to dismiss*, and before any discovery had begun." *Chiles*, 865 F.2d at

1213; *see also Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125-26 (5th Cir. 1970).

Applying these factors to the instant case, Applicant's Motion is timely.

Discovery has not begun, litigation remains at an early stage, and intervention at this

point will not prejudice either party. *Davis v. Southern Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 670 (S.D. Fla. 1993) (allowing intervention with the case "pending for more than two years, [and] discovery on the merits [not] completed").

Applicant and its interests will be prejudiced if its request for intervention is denied. Applicant's presentation of facts and evidence framing the issues of the action will benefit both parties and also the public safety interest as expressed by the Chief of the New Mexico State Police,[16] Gallatin County Sheriff in Montana who by far lead the state in search and rescue events,[17] and Federal officials in Yellowstone National Park,[18] judged by their public statements regarding quest dangers as evidenced by at least four reported accidental outdoor deaths of quest participants.[19]

### 2.    Applicant has a Substantial Legal Interest in this Litigation

For an applicant's interest in the subject matter of the litigation to be cognizable under Rule 24(a)(2), it must be "direct, substantial and legally protectable." *U. S. Army Corps of Engineers*, 302 F.3d at 1249. *See also Chiles*, 865 F.2d at 1212-13 (noting that the focus of a Rule 24 inquiry is "whether the intervenor has a legally protectable interest in the litigation"). The inquiry on this issue "is '[flexible, focusing on] the particular

---

[16] Oxford, Andrew; *Santa Fe New Mexican*, June 19, 2017 https://www.santafenewmexican.com/news/local_news/state-police-chief-to-fenn-stop-this-nonsense/article_81424a8c-6282-5590-ad92-5a2a966e4771.html

[17] MTN News; *KBZK*, Bozeman, Mont.; June 18, 2019 https://kbzk.com/news/crime-courts/2019/06/18/gallatin-county-sheriff-addresses-forrest-fenn-treasure-hunters/

[18] Wamsley, Laurel; *NPR*, February 20, 2018 https://www.npr.org/sections/thetwo-way/2018/02/20/587427220/search-for-buried-treasure-linked-to-illinois-man-s-death-at-yellowstone

[19] Roberts, Michael; *Westword*, February 23, 2018 https://www.westword.com/news/forrest-fenn-treasure-deaths-victims-ex-wife-says-six-have-died-10019518

facts and circumstances [of] each [motion to intervene].'" *Chiles*, 865 F.2d at 1214

(quoting *United States v. Perry County Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978)).

Applicant has a legally protectable interest in this litigation.  That interest

manifests, *inter alia*, as a registered Federal copyright and any future value deriving from

publication of the solution or recognition as having solved the quest, whether in

conjunction with or independently of Defendant's role in determining such value.  Thus,

Applicant's interest in the pending litigation merits intervention as of right.

### 3.     The Disposition of the Instant Litigation May Impair Applicant's Ability to Protect Its Interest

Applicant's ability to protect its substantial legal interest would be impaired

absent intervention.  Unfavorable disposition or even unfavorable proceeding of this case

may impair the value of the work of Applicant.  The outcome of this case could implicate

*stare decisis* concerns warranting intervention.  *See Stone*, 371 F. 3d at 1309-10

(recognizing that potential for a negative *stare decisis* effect "may supply that practical

disadvantage which warrants intervention of right").  (citing *Chiles*, 865 F.2d  at 1214).

### 4.     The Existing Parties Do Not Adequately Represent Applicant's Interests

The fourth and final element to justify intervention of right is inadequate

representation of Applicant's interest by existing parties to the litigation.  This element is

satisfied if Applicant "shows that representation of his interest 'may be' inadequate."

*Chiles*, 865 F.2d at 1214 (citing *Trbovich v. United Mine Workers of America*, 404 U.S.

528, 538 n. 10 (1972)).  The burden on Applicant to show that existing parties cannot

adequately represent its interest is "minimal." *Stone*, 371 F.3d 1311; *U.S. Army Corps of Engineers*, 302 F.3d at 1259 (citing *Trbovich*, 404 U.S. at 538 n. 10). Any doubt concerning the propriety of allowing intervention should resolve favor of Applicant because it allows the court to resolve all related disputes in a single action. *Lloyd v. Alabama Dep't of Corrections*, 176 F.3d 1336, 1341 (11th Cir. 1999); *Federal Sav. and Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

In this case, Defendant and Applicant may agree about facts but conflict regarding a secrecy or transparency interest in truthful information of credible and evidentiary quality exposing the quest solution. Because Plaintiff challenges the veracity of the quest and thus the value of Applicant's work, and because Applicant created unique visual and other documentary proof of solving the quest, Applicant's open presentation of the visual solution herein, plus documentation envisaged to be presented in discovery on the merits, refutes claims of Plaintiff in a substantively different, more plain and direct, more compelling, more specific, more detailed, less vague, and more comprehensively conclusive way than Defendant may choose to express. Applicant cannot predict how Defendant, a public person with both a cultivated image and an ingrained habit of inscrutability even while truthful, might respond, or what course the case might take. Particularly where a party, having crafted a calculated reputation for cryptic or elliptical pronouncements by elaborate construction and art spanning a decade, is named as Defendant, only timely intervention and clarity secure the unique interests of Applicant.

**B.      Applicant Meets the Requirements for Permissive Intervention**

Rule 24(b) provides an alternative basis for Applicant's intervention in this action.

Rule 24(b) states:

> Upon timely application anyone may be permitted to intervene in an action …when an applicant's claim or defense and the main action have a question of law or fact in common.  […]  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The Eleventh Circuit has established a two-part test to guide the Court's discretion as to whether a party may intervene pursuant to Rule 24(b): the applicant must show that "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *Chiles*, 865 F.2d at 1213 (citing *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983)).

As discussed above, Applicant's application for intervention in this litigation is timely and would neither unduly delay the proceedings nor prejudice the rights of the original parties.  Additionally, Applicant's claims and evidence share common questions of fact with claims of Plaintiff and matters with which Defendant has associated publicly and consistently.  Accordingly, Applicant meets the requirements for permissive intervention.

## III.   CONCLUSION

For the foregoing reasons[20] the Court should grant Applicant's Rule 24 Motion to intervene (i) as a matter of right pursuant to Rule 24(a)(2) or, in the alternative, (ii) permissively pursuant to Rule 24(b).

Dated: December 18, 2019

Respectfully submitted,

BRIAN ERSKINE

_/s/ Brian Erskine_

1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com

---

[20] And with this elaborately lengthy, discursive Motion "having grown as it has gone" (New Mexico).  See note 5.

## CERTIFICATE OF CONFERENCE

I hereby certify that pursuant to Local Rule 7.1(a) and as detailed above, I have communicated with both Plaintiff and Defendant by various means including email, tracked postal mail, mobile text message, and phone, at various times between December 6 and December 16, 2019, concerning the foregoing.  Plaintiff opposes this Motion.  Defendant referred or deferred response to Defendant's counsel.

              /s/ Brian Erskine

          1338 Sabatina Street
          Prescott, Arizona 86301-7402
          (949) 424-4294
          kattigara@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2019, a true and correct copy of the foregoing has been served by the Notice of Electronic Filing, and was electronically filed with the Clerk of the Court via the CM/ECF system.  Also on the same date, a true and correct copy of the foregoing has been served by certified mail to Plaintiff and Defendant at the addresses found on the form filed to initiate the action.

              /s/ Brian Erskine

          1338 Sabatina Street
          Prescott, Arizona 86301-7402
          (949) 424-4294
          kattigara@gmail.com