FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
DEC 3 0 2019
MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID HAROLD HANSON,

Plaintiff,

v.

FORREST FENN,

Defendants.

Case No. 1:19-cv-01124-KK

**SUPPLEMENTAL AFFIDAVIT OF BRIAN ERSKINE**
**IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANT**

STATE OF ARIZONA )
)
County of Yavapai )

I, BRIAN ERSKINE, being first duly sworn, state and allege as follows:

1. Attached as Exhibit A, pursuant to FED. R. CIV. P. 24(c), is an answer pursuant to FED. R. CIV. P. 7(a)(2) containing the proposed pleading, and a cross-claim pursuant to FED. R. CIV. P. 13(g), if the Motion to Intervene as Defendant and Memorandum in Support ("motion") filed on December 18, 2019 is granted.

2. Attached as Exhibit B is a true and accurate, illustrated, annotated copy of the written solution to the Forrest Fenn treasure quest ("quest") referenced in the motion.

3. Attached as Exhibit C is a true and accurate copy of copyright to the material in Exhibit B.

4. Attached as Exhibit D is a true and accurate copy of a draft article submitted for publication to *True West* in November 2019, in which key aspects of the quest solution are exposed with emphasis on elements and narratives suitable for presentation in a popular periodical.

5. Attached as Exhibit E is a true and accurate partial list of references to fifteen (15) published quotes or statements by or attributed to Forrest Fenn ("Defendant") explicitly, consistently linking the quest solution with turning over or looking under a log, by various exact words or phrasing, thus metaphorically but clearly supporting the visual proof shown in the motion by reference to the letters "log" in the chapter title "Epilogue" above the Polt drawing in the memoir authored by Defendant, as referenced in the motion.

6. Attached as Exhibit F is a true and accurate summary of three (3) main forms of visual proof of the solution in the form of a short, informal slide presentation.

7. Attached as Exhibit G is a true and accurate representation of the main page of the website https://fennsolve.com, whose various links publish Exhibits A, D, E, and other factual quest solution materials including the visual proof referenced in the motion and coordinates of its geographic site ("site") as "red-pinned" to an online "Google map."

8. Attached as Exhibit H is a true and accurate representation of another short, informal slide presentation linking the quest to the Toledo, Ohio area and its history and geography, as prepared for and sent to senior journalists at the *Toledo Blade*. Recipients did not acknowledge this presentation or a follow-up communication.

9. Attached as Exhibit I is a true and accurate representation of all email correspondence between Brian Erskine ("Affiant") and Defendant pertaining to the action, in which Affiant, having in December 2019 prepared to file to be admitted as a prospective Applicant as referenced in the motion, communicates cordially, invites Defendant to meet informally, and expresses positive, respectful motivations for quest participation, efforts to intervene in the action, and any planned or reasonably foreseeably subsequent actions, including careful care

and maintenance of Defendant's legacy, in a good-faith effort to connect with Defendant and to inspire Defendant with further possibilities for quest development as a richly meaningful artistic, literary, cultural, and social experience, of service and value to others.

10. Further to the subject of communication between Affiant and Defendant with reference to certain of Plaintiff's allegations, Affiant states without exhibit that Affiant has for an extended time attempted mutual correspondence with Defendant by supplying Defendant with quest solution materials and article drafts, copying reports to police referenced in the motion, and once communicating through the editor of *True West*. These communications were infrequent, reasonable, and positive in nature. Defendant did not acknowledge Affiant, but presumably Defendant has been aware, for some number of calendar quarters, of Affiant's work. Affiant learned only by following up with the editor of *True West* that Defendant acknowledged the editor's forwarding of Affiant's solution materials with a reply of "Thank you." The first mutual communication between Affiant and Defendant was by phone on December 9, 2019. Affiant never had attempted to phone Defendant before and, though occasionally traveling to Santa Fe, never had attempted to visit or locate Defendant, always respecting Defendant's privacy. All interaction initiated by Affiant to Defendant has met a reasonable professional and social standard, deriving from Affiant's positive character and a natural assumption that Defendant as a public figure **would wish to connect** with the solver of the public quest, as Defendant has with other quest participants, while politely respecting boundaries of Defendant's personal space, time, and attention.

11. Further to the subject of communication between Affiant and Defendant with reference to certain of Plaintiff's allegations, Affiant states that during the brief phone call between

Affiant and Defendant in conference before filing of the motion, Defendant asked Affiant, unprompted, about Affiant's "motivations." Affiant replied with a respectful, enthusiastic, extemporaneously incomplete summary communicating various positive motivations and suggested, but did not attempt to fix, a meeting to discuss in more depth, setting a positive communications precedent for subsequent outreach to Defendant shown in Exhibit H.

12. Further to the subject of communication between Affiant and Defendant with reference to certain of Plaintiff's allegations, Affiant states that he first learned of the quest in May 2016 while living and working in Cambodia, through a web article about the accidental death of a quest participant, and pursued the quest as a hobby or intermittent pastime, focusing only as casual progress seemed to warrant. Affiant quickly identified or prioritized the area of the site, repeatedly exploring only the site and its vicinity in conjunction with quest activities during occasional trips to the United States. Affiant strategically timed an August 2018 site visit to coincide with inclement rainy-season weather in Cambodia, ideal weather in Colorado, and a regional drought marked by nearby, extensive forest fires including the "416 Fire" and the "Burro Fire," correctly predicting that the water level in the Uncompahgre River would be minimal, enabling Affiant to use the river as a convenient hiking path or outdoor corridor, facilitating ease of site exploration or physical access to the otherwise rugged site while offering fresh mental, visual, and photographic perspectives. As referenced in the motion, Affiant photographed the site underpinning the visual proof during this visit, noting its remarkable landscape without realizing its key quest significance. Affiant made the "visual proof connection" in April 2019, in an inspirational moment or

"flash" of realization, between that photo and the Polt drawing as referenced in the motion. Affiant received no privileged assistance from Defendant in these or in any other efforts.

13. Further to the subject of communication between Affiant and Defendant with reference to certain of Plaintiff's allegations, Affiant states that in 2019 Affiant has worked to earn informal but clear support among community leaders in Prescott, Arizona, including leaders of arts and cultural institutions, for efforts to bring any box that Defendant might award as stipulated by Defendant to be central to the quest and as referenced in the motion, intact to Prescott for curation and display. These efforts are congruent with Affiant's use of the Arizona state motto, "God enriches," historically created in Prescott by Richard C. McCormick, the first secretary of Arizona Territory, as a riposte in quest solution to Defendant's use of the Colorado state motto, "Nothing without the will of the deity," dating also to Colorado's historic territorial period, as part of the quest mystery and as connected with a photo of Defendant shown in Exhibits A and E and found by Affiant on public display in an "Instagram account" associated with Defendant. This creative link between the two state mottos, with Arizona's artfully responding to Colorado's, is the work of Affiant and is richly detailed in Exhibit C. Contrary to Plaintiff's claims, no coordination, planning, or collusion between Defendant and Affiant supported this or any other works of Affiant.

**14. Further to the subject of communication between Affiant and Defendant with reference to certain of Plaintiff's allegations, Affiant affirms personal experience of a level of difficulty, adversity, or frustration specifically in publicly communicating the quest solution despite easily, confidently convincing skeptical individuals and institutional authorities of its accuracy, readily winning informal but clear support. In firm**

**refutation of Plaintiff's allegations of favoritism tantamount to fraud by Defendant, Affiant feels intentionally ignored by Defendant in persistent, reasonable efforts to connect or to alleviate what Affiant regards as seemingly protracted awkwardness in the key matter of resolving the quest created and publicly socialized by Defendant and unlocked by Affiant. Affiant denies communicating any "sense of entitlement," trying to pressure Defendant, or constructively aiming to strip Defendant of control. Affiant feels particularly that as Westerners, with the quest bearing strong historic and cultural themes of the American West, the quiet meetings and open, casual, respectful, "man to man" conversations Affiant has sought or aimed to create with Defendant, including with a mutually trusted intermediary, would beneficially facilitate definitive quest conclusion reflecting favorably on Defendant and Defendant's legacy. Affiant consistently has expressed positive motivation to Defendant, but speculates as to Defendant's motivation or state of mind. Affiant questions what conceivable legitimate interest could be served by possible further delay, refusal, or failure by Defendant publicly to admit, affirm, and validate the quest solved by Affiant and thus ended; to engage constructively with Affiant regarding quest solution and its implications; or by any other forms, whether active or passive, of rejecting, obfuscating, avoiding, or dodging the overwhelmingly objectively evidenced, copiously documented, irrefutably accurate, fully detailed, highly organized, logical fact pattern plainly indicating quest conclusion. Any facilitation of misperception that the quest remains unsolved, by any denial of manifest reality, whether by active or passive leverage of Defendant's incumbent public profile against the relative obscurity of Affiant or by any other means**

**including silence, is now entirely destructive and merely suppressive of manifest truth. False public "inspiration" by manipulative misperception fuels misunderstanding and confusion, subverting a primary positive purpose of the quest as expressly and motivationally defined by Defendant, jeopardizing Defendant's legacy, its potential for service and value to others, and the value of Affiant's work, contrary to Plaintiff's allegation that Defendant must have favored Affiant; while also irresponsibly helping generate negative public repercussions, as evidenced by this action, perhaps other future actions, and by foreseeable perpetuation of safety risks as decried by authorities, whose concern is motivated by possible costs in lives, health, order, resources, and wasted time as evidenced by recurring incidents and as noted in the motion.**

15. Exhibits A, B, C, D, E, F, G, H, and I together with this affidavit comprise "documentation" referenced in the motion and represent, in composition or compilation, original work by Affiant without Defendant's privileged assistance, in refutation of Plaintiff's claims of fraud and other claims including such assistance. All factual allegations in the exhibits and in the motion are true and accurate and are incorporated herein by reference.

Respectfully submitted,

Brian Erskine, Affiant

1338 Sabatina Street
Prescott, AZ 86301-7402
(949) 424-4294
kattigara@gmail.com

SUBSCRIBED AND SWORN to before me, the undersigned Notary, this 27 day of December, 2019, by BRIAN ERSKINE

Notary Public

10/7/22
My Commission Expires

ALEENA ROUSSELLE
Notary Public - State of Arizona
YAVAPAI COUNTY
Commission # 554459
Expires October 07, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2019, a true and correct copy of the foregoing including all exhibits with color imagery has been sent to a professional process server for verified service to Plaintiff, and by certified mail, return receipt requested, to Defendant; including to both Plaintiff and Defendant another true and correct black-and-white copy of the original Motion to Intervene already filed with the Court for better perfection of service of all filings; at the addresses found on the form filed to initiate the action. The original Motion to Intervene already filed with the Court was not filed a second time with the Court.

/s/ Brian Erskine

1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com



PRESS FIRMLY TO S

RECEIVED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NM

DEC 30 2019

MITCHELL R. ELFERS
CLERK

U.S. POSTAGE
PME
PRESCOTT, AZ
86301
DEC
AMOUNT
$
R230

1007 87102

# FOR DOMESTIC AND INTERNATIONAL USE



EE178711686US

UNITED STATES POSTAL SERVICE® | PRIORITY ★ MAIL ★ EXPRESS™

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT) PHONE ( )

BRIAN FALLINE
1336 SABATINA STREET
PRESCOTT AZ 86301 7462

**PAYMENT BY ACCOUNT (if applicable)**

**DELIVERY OPTIONS (Customer Use Only)**

☐ **SIGNATURE REQUIRED** *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**

☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT) PHONE ( )

US DISTRICT COURT CLERK
(FACT AFFIDAVITS)
333 LOMAS BLVD NW #270
ALBUQUERQUE NM

ZIP + 4® (U.S. ADDRESSES ONLY)
8 7 1 0 2 - 2 2 7 4

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage $ | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 10:30 AM ☐ 3:00 PM ☐ 12 NOON | Insurance Fee $ | COD Fee $ |
| Time Accepted ☐ AM ☐ PM | 10:30 AM Delivery Fee $ | Return Receipt Fee $ | Live Animal Transportation Fee $ |
| Special Handling/Fragile $ | Sunday/Holiday Premium Fee $ | Total Postage & Fees $ | |
| Weight ☐ Flat Rate lbs. ozs. | Acceptance Employee Initials | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, OCTOBER 2016 PSN 7690-02-000-9996 3-ADDRESSEE COPY

WHEN U A CUS LABEL

S RECYCLABLE.

ATE * ME + D N REQU

... pe.usps.com for complete details.

+ Money Back Guarantee for U.S. destinations only.