1338 Sabatina Street
Prescott, Arizona 86301

March 3, 2020

The Honorable Chief Judge William P. Johnson
U. S. District Court for the District of New Mexico
333 Lomas Blvd NW # 270
Albuquerque, New Mexico 87102

Re: Hanson v. Fenn, et al., Case No. 1:19-cv-01124-WJ-KK

Dear Chief Judge Johnson:

     As the Court ordered on February 20, 2020, I am re-filing the attached proposed Answer and Cross-Claim as an Exhibit to my pending Motion to Intervene. For the reasons set forth in the Motion and Exhibits, it respectfully should be granted. An exhibit to this cover letter, after brief comments, also summarizes five key recent case developments, as events both within the case and bearing on the case from without have changed significantly since the original filing.

     Contract law is a key part of the life of law and order as socially expressed,[1] but the Fenn Quest — this evidently solved Quest — begets disorder including accidental deaths, rescues, crimes, and two pending Tenth Circuit cases. It is the aim of the action that the implied unilateral contract-in-fact be interpreted in good faith and integrally followed all the way through, just as I have on the Quest, and that the matter be concluded properly and as described.[2]

Respectfully,

Brian Erskine

---

[1] "all law, including contract, is regulatory […] enforceable contract is a societal institution that sets the limits within which parties may exercise some degree of control […] Contract law also defines parties' obligations […] Mediating between private ordering and social concerns, contract is […] an institution that requires an array of normative choices." Jean Braucher, *Contract Versus Contractarianism: The Regulatory Role Of Contract Law*, 47 **Washington & Lee Law Review** 697 (1990), p. 699.

[2] "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Broad, but valid. *Restatement (Second) of Contracts* § 205 cmt. [a] (1981)

## EXHIBIT TO COVER LETTER SUMMARIZING KEY CASE DEVELOPMENTS

The Tenth Circuit has "historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene."[3] The Cross-Claim addresses a kind of sleight-of-hand[4] of contract law and presupposes that even institutional litigants with professional lawyers might state that their contracts cases are exceptional.[5] Though I claim contractual clarity, any ambiguity found in the contract interpretation[6] might invoke *contra proferentem*.[7]

I respectfully ask that remedy be applied as judged reasonable and appropriate[8] provided my cross-claim meets the standard of *Johnson v. City of Shelby* (135 S. Ct. 346 (2014)), in which

---

[3] "*W. Energy All. v. Zinke, 877 F.3d 1157, 1164* (10th Cir. 2017) (citing *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996); see *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005) (the Tenth Circuit generally follows a liberal view in allowing intervention under Rule 24(a) (citing *Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir.1977)); *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) ("This circuit follows 'a somewhat liberal line in allowing intervention.'") (quoting *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977))," all from *Samsung Top-Load Washing Machine Marketing, Sales Practices, and Product Liability Litigation*, MDL Case No. 5:17-ml-2792-D (U. S. District Court, Western District of Okla., August 2, 2018).

[4] Prominent contracts cases turn on such questions. "The dispositive question in the present case is simply whether Market Street Associates **tried to trick** the pension trust and succeeded in doing so. If it did, this would be the type of **opportunistic behavior in [a] contractual relationship that would violate [good faith]**." Judge Richard Posner, Market Street Associates Limited Partnership v. Frey, 941 F. 2d 588 (7th Cir. 1991).

[5] For example, "that the circumstances of this case are unique and that case law dealing with run-of-the-mill […] contracts between private parties are not dispositive or even adequate for a rule of decision." *Tri-State Generation v. Shoshone River Power*, 805 F.2d 351, 358 (10th Cir. 1986)

[6] "A promise may be lacking, and yet the whole writing may be "instinct with an obligation," imperfectly expressed. If that is so, there is a contract." Cardozo, Benjamin; *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91; 118 N.E. 214 (N.Y. 1917).

[7] "[Some contracts create] a cooperative enterprise, which may to some extent place one party at the other's mercy." Judge Richard Posner, *Market Street*, Id. See also *Shaw v. United States*, U. S. Court of Federal Claims, No. 14-783C (Filed: March 31, 2017) for application of *contra proferentem* doctrine.

[8] Scholarly work seems mainly to concern conventional commercial contracts, but a model of cost recovery reflecting the time value of money, amid lengthy career diversion, while struggling to motivate and achieve good-faith resolution as described in the Filings, might apply a "full restitution" or "make-whole" model, though in an open-ended unilateral contract such as the Quest there is also no typical "termination option." For me, the Box is enough. Victor P. Goldberg, *Reckoning Contract Damages: Valuation of the Contract as an Asset*, 75 **Washington & Lee Law Review** 301 (2018), p. 302.

the Supreme Court makes clear that a strict standard in describing theory of recovery does not apply and that what matters in pleading are the underlying facts and providing Defendant's counsel with the factual basis for the Cross-Claim, which I plainly painstakingly have done.

Additionally:

1. Another Tenth District case,[9] *United States v. Christensen*, a criminal case arising from alleged disorderly actions in Yellowstone National Park by a participant in Defendant's notorious treasure quest ("Quest"),[10] was filed in the District of Wyoming on January 14, 2020. The Wyoming case concerns a risky, life-saving, technical rescue reportedly performed on January 6 at dusk in a snowy ravine.[11] The sustained, negative public safety implications of the Quest, expressed by police to whom I already presented and observed *inter alia* in my Filings, were thus timely validated.

2. Case parties agreed to withdraw the original Complaint, mooting the Answer.

3. Defendant's counsel and I conferred between February 12 and February 25, 2020. The main topics were withdrawal of the Complaint, and thorough articulation of my evidence and position.

---

[9] Davis, Mark; Powell (Wyo.) Tribune, February 11, 2020, https://powelltribune.com/stories/yellowstone-treasure-hunter-pleads-not-guilty-to-alleged-violations-of-park-rules,23883

[10] For context, see Burnett, John; NPR, March 3, 2016, https://www.npr.org/2016/03/13/469852983/seeking-adventure-and-gold-crack-this-poem-and-head-outdoors

[11] "Danger invites rescue. … The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had." Cardozo, Benjamin; *Wagner v. International Railway Co.*, 232 N.Y. 13 (N.Y. 1926), setting forth the rescue doctrine which holds negligent parties liable not only for injury to the victim, but to [rescuers]. I am no jurist, but I observe that a favorable ruling likely would eliminate this Quest from Tenth Circuit's docket, while Defendant might beware of this doctrine.

4. Through counsel, Defendant rejected a meeting I proposed, persisting in a frustrating pattern of refusing cordial outreach over roughly the past 18 and particularly 12 months, including through mutually trusted, prominent intermediaries, such as the CEO and publisher of a major regional culture and heritage periodical who also informally believes the quest solved (as do others, such as senior police).

5. The U. S. Court of Federal Claims helpfully reminded, in a ruling issued during this case, "An implied-in-fact contract is one founded upon a meeting of minds and is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." The Claims Court also noted that an implied-in-fact contract must meet the same requirements as an express contract, including: mutuality of intent to contract; lack of ambiguity in offer and acceptance; and consideration.[12] Modified only to substitute "performance" for "acceptance" (or perhaps "acceptance by evident performance, in response to a plain, unilateral offer") so as to reflect a unilateral rather than a bilateral contract, I apply that familiar framework to Defendant and Quest in the Cross-Claim. I respectfully ask for case evaluation in the lively spirit of contract law's intellectual patron, Benjamin Cardozo, and reflecting confidence in contractual good faith, in the spirit of Richard Posner.

---

[12] *Panther Brands, LLC v. United States*, No. 16-1157C (December 17, 2019).

USPS Priority Mail Express shipping label:

FROM: B. ERSKINE, 1338 SABANNA ST., PRESCOTT, AZ 86301-7402, PHONE (949) 424-4294

TO: U.S. DISTRICT COURT, CLERK OF THE COURT, 333 LOMAS BLVD NW #270, ALBUQUERQUE, NM 87102-2274, PHONE (505) 348-2000

Postage: $26.35, Prescott AZ, MAR 03, 20
Tracking: EE 178 711 187 US
Date Accepted: 2/3/20/20, Time: 10:30 AM
Scheduled Delivery: 3/2/20/20, 12 NOON
Weight: 15 ozs, Flat Rate
Postage $24.25, Total $26.35

RECEIVED stamp: MAR 04 2020, MITCHELL R. ELFERS, CLERK, UNITED STATES DISTRICT COURT, ALBUQUERQUE, NM