IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

20 MAR -4 AM II: 41

CLERK-ALBUQUERQUE

|  |  |
|---|---|
| DAVID HAROLD HANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **Case No. 1:19-cv-01124-WJ-KK** |
| | ) |
| FORREST FENN; and | ) |
| BRIAN ERSKINE (Intervenor), | ) |
| | ) |
| Defendants. | ) |

## ANSWER AND CROSS-CLAIM OF BRIAN ERSKINE AS INTERVENOR AS EXHIBIT TO MOTION TO INTERVENE

Pursuant to FED. R. CIV. P. 24(c), 7(a)(2), 13(g), and 8(a), Brian Erskine ("Intervenor") states a nominal Answer to David Harold Hanson ("Plaintiff"), whose withdrawal of the Complaint is already agreed pending Court approval; and states a comprehensively detailed Cross-Claim against Forrest Fenn ("Defendant").[1]  This re-filing is both by direction and leave of the Court as given in an order ("Court Order") of February 20, 2020 striking the original Answer and Cross-Claim as improperly filed.  The Court Order correctly inferred that "Mr. Erskine intended to make his proposed answer and crossclaim an exhibit to his Motion to Intervene as the mandatory 'pleading that sets out the claim or defense for which intervention is sought'" under Rule 24(c) and is accordingly respectfully submitted in compliance.

---

[1] All terms herein have the same meaning as in previous filings by Intervenor in this case, which comprise a Motion to Intervene ("Motion") and Affidavit in Support with Exhibits ("Affidavit," together "Filings").

1

Rule 24(c) states "A motion to intervene must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought." A carefully respectful reading of the Court Order shows that it struck only the misfiled pleading. To most efficiently comply with its plain intent, the updated Cross-Claim is re-filed simply as deemed by the Court Order to be a valid Rule 24(c) pleading as incorporated into the Motion, without a concomitant re-filing of the Motion or the Affidavit and its other Exhibits. The filed Affidavit and its remaining Exhibits then would support both the Motion and this, its incorporated Cross-Claim.

1. ANSWER

    1. With the Complaint pending withdrawal, the otherwise mooted Answer is respectfully addressed *inter alia* herein.

2. AS AND FOR A CROSS-CLAIM AGAINST DEFENDANT

    1. Intervenor is a citizen of Arizona.

    2. Upon information and belief, Defendant is a citizen of New Mexico.

    3. The Court has subject matter jurisdiction by diversity under 28 U. S. C. 1332. Intervenor and Defendant are citizens of different states and upon information and belief, the value of the hidden treasure ("Box") that Defendant publicly promised as consideration, reward, or payment to the individual performing by solving the Quest, exceeds $75,000.

    4. Intervenor admits that in January 2010 Defendant published a memoir featuring the Quest, which in summary is a public puzzle based on a cryptic poem and a regional map of the western slopes of the Rocky Mountains.[2]

    5. Intervenor claims that the Quest (mostly) fits common-sense understanding of a "hidden treasure quest," motivating notoriously wide participation by offering the Box as consideration for solving the Quest; and with that act of solving ostensibly, or presumably from that common-sense understanding, to be performed in two challenging steps: first by identifying an unknown location by decoding the cryptic poem and also by other information, and second by searching that location and presumably necessarily physically finding and possessing the Box by self-help.[3]

_____

[2] A geography spanning four states, comprising about 160,000 sq. mi.

[3] An assumption that turns out to be so wrong, that the Quest can't be solved without relinquishing it.

6. Intervenor claims centrally that Defendant is the unilateral party or obligated offeror *in an implied unilateral contract-in-fact* (effectively, the Quest), indeed one of typical legal form (despite the idiosyncratic Quest) by pre-arrangement in which the offeror openly obligates by promise to pay for a specific act by a specific individual.

7. Intervenor claims that while the Quest is open to public participation, the counter-party or promisee is the individual solving the Quest, not "the public."

8. Intervenor claims that the act is solving the Quest, and that Defendant's contractually obligated payment or consideration for that act's performance is the Box.

9. *Intervenor claims that Intervenor has performed that act, by solving the Quest as detailed in the Filings and herein.*

10. Intervenor claims that Defendant has reneged on, or failed to deliver, the obligatory consideration or payment, thus unlawfully violating the contract.

11. Intervenor denies both possession of the Box and knowledge of its whereabouts.[4]

12. *Intervenor claims that Box whereabouts are irrelevant, as are its means of concealment or means of delivery*, with no need to evidence the presence or absence of the Box with regard to any particular location.[5]

13. Intervenor claims that Defendant's main means of evading the obligation are both simply hiding the Box and a kind of slight-of-hand or deft manipulation of the perception of the Box's unknown whereabouts so as falsely to cast an aspersion of failure onto Intervenor.

---

[4] Defendant publicly states that only Defendant knows.  See Burnett, John; NPR, March 3, 2016, *https://www.npr.org/2016/03/13/469852983/seeking-adventure-and-gold-crack-this-poem-and-head-outdoors*.

[5] As evidenced in the Filings, Intervenor believes the Box to be in secure control of Defendant and never to have left that control.  Intervenor naturally speculates as to the nature and milieu of that control, and concedes that the Box even could be concealed outdoors, but does not particularly care.  Contract obligation cannot be evaded lawfully by hiding the consideration.

14. Intervenor claims that by so doing, Defendant aims neatly to conflate or perversely "cross-wire" two basic elements of contract law, *performance* and *consideration*.

15. Intervenor claims that Defendant conveniently and falsely *pretends that failure to possess the Box is nonperformance by Intervenor, rather than reneging by Defendant.*

16. Intervenor claims *performance* by true and genuine evidence — solving the Quest — by true, correct, and *counter-intuitive* means copiously shown in the Filings and herein.[6]

17. Intervenor admits that clues or other public information ("Clues and Hints") furnished by Defendant, wherever or however, to enable identifying, finding, and searching some unknown, unique place ("Site"), were (constructively) entirely true and genuine.[7]

18. Intervenor claims that *the only significant constructive deception of Defendant* with any connection to the Quest is found not in any of the Clues and Hints or in any genuine Quest challenge, including any absent Box *as a Quest challenge*, but rather in the contractual violation driving the actual and justiciable controversy before the Court.[8]

19. Intervenor claims that solving the Quest by Site identification and copious evidencing as shown in the Filings — not Box retrieval — is the central Quest challenge, as such evidencing makes the Quest harder, requiring a participant to "think outside the Box" for a solution that perhaps appears "alternative" but is the unique, true, and genuine solution.

---

[6] Due to the tempting glamor of the dazzling Box and the common conception of a treasure quest, widely but inaccurately held public expectation likely exists that the Quest may end validly only with a found Box. Such misperception would favor Defendant's reneging, wrongly labeling Intervenor to be merely the latest in a lengthy series of actual, often buffoonish non-performers.

[7] The Site is found in the San Juan Mountains. of Colorado, near the city of Ouray, on the west bank of the Uncompahgre River opposite its junction with Climax Creek, near U. S. Hwy. 550, the "Million Dollar Highway," as detailed, by exact coordinates, in the Filings.

[8] Nott, Robert; *Santa Fe New Mexican*, December 21, 2019; https://www.santafenewmexican.com/news/local_news/man-says-he-has-discovered-forrest-fenn-s-treasure/article_8bdec7e0-2027-11ea-bd41-5bf5044a64d0.html

20. Intervenor denies that claiming irrelevance of Box whereabouts in any way "assumes away" or dodges the Quest challenge, which Intervenor evidently satisfied, but rather exposes Defendant as dodging delivery of the consideration.

21. Intervenor claims that the Quest structure is summarized as follows: (i) locate and explore the Site and its environs; (ii) conclusively identify the Site; (iii) search the Site for the Box in the natural but incorrect belief, or initial and as yet unquestioned assumption, that its finding and retrieval are the performance criteria; (iv) fail — inevitably by Defendant's design — to find the Box; (v) with little guidance,[9] resiliently persist, neither by forcibly intensifying the Box search[10] nor by leaving the Site to seek the Box elsewhere, but by overcoming failure or shifting mental focus and effort, mentally pivoting only at the Site to seek other evidence, defined by the fruitlessness of the Box search as "apparently something unknown but other than the Box," (vi) evidence true performance in another form, described herein and in Filings; (vii) motivate Defendant to deliver the consideration or Box on the contractual obligation actualized by the fact and evidence of performance or as a result of the evident performance.

22. ***Intervenor claims that failing to find the Box is both inevitable and, in a legitimate ruse or severe meta-challenge at the very crux of the Quest, is an engineered "pseudo-failure" or extra obstacle deviously required to solve the Quest, first by overcoming the failure oneself, and then by overcoming the public perception of failure implied by Box absence, as now drives the actual and judicable controversy before the Court.***

---

[9] This lack of guidance is a key Quest challenge or feature, not evidence of unspecific contractual terms.

[10] Foolish persistence dooms a participant. Bennett, Megan; July 14, 2018, *Albuquerque Journal*. https://www.abqjournal.com/1196496/pennsylvania-man-cited-for-actions-in-pursuit-of-fenn-loot.html

23. Intervenor claims that from among the copious evidence, ***definitive summary evidence or the most compelling single piece of evidence*** of performance is a composite visual image ("Visual") comprising an overlay of two images as detailed in the Filings, representing the apparent "alternative" but true and genuine "counter-intuitive" solution.

24. Intervenor claims that the first or "top" image is the illustration entitling the epilogue of Defendant's memoir, published in January 2010.[11]

25. Intervenor claims that the second or "bottom" image is an outdoor landscape photograph of the Site taken by Intervenor in August 2018, and thus that the Visual shows the Site.

26. Intervenor claims that these two images closely match by Defendant's design as summarized herein and as centrally evidenced and detailed in the Filings.

27. Intervenor claims that the Visual, by plainly and clearly associating the uniquely matching forms, features, and proportions of the paired landscape and drawing with consistent Quest themes, ***is a "marker" for the Box, that proves the Site correct and the Quest solved, by "reverse-engineering" the drawing back to the landscape***, thus functioning similarly, but as virtual or conceptual art, to an object used as a marker in another contemporary quest[12] — in other words, while landscapes inspire drawings, in this case, ***"here's a drawing, now use the poem, clues, and hints, to go find that specific landscape somewhere in the Rockies."*** Evidence in Filings, and additional available evidence, shows that that match is the purpose of the drawing in the Quest context.

---

[11] Placed late in the memoir as if to show that at the end of *The Thrill of the Chase: A Memoir* is found the treasure.

[12] In France, a similar quest entails finding a hidden object, not a hidden image: a bronze owl figurine. Scofield, Hugh; *BBC*, August 21, 2018; https://www.bbc.com/news/world-europe-45005072

28. *Intervenor claims that the Visual and its supporting evidence as detailed in Filings could exist only by Defendant's design, both lawfully and reasonably to provide physical security or protection for the Box during the Quest[13] and perhaps less creditably to give Defendant a "plausible deniability option" to foster false perception of nonperformance by hiding the consideration so as to facilitate, and perhaps also to facilitate public approval for, its unlawful withholding.*

29. Intervenor claims that the Site's *vicinity* was remarkably easy to find;[14] that identifying the exact Site within that vicinity was considerably harder; that perceiving or recognizing the way in which the Site was significant was extremely difficult, and that consequently *the Visual, the end product of such work, was maximally difficult to produce.*

30. Intervenor claims the required information was available and cognizable[15] by correctly decoding the cryptic poem and by resort to maps, and to a significantly lesser degree by correct contextual interpretation of Defendant's various other deeds and works, all as clearly and accurately stated by Defendant, *except for the crucial illustration found in the epilogue of Defendant's memoir* as described in the Filings, which is *the top half of the Visual* to be matched by overlaying onto the landscape photo, as *the essential means of compellingly evidencing the already identified Site* as the uniquely correct solution.

---

[13] The whereabouts of the Box are irrelevant, but the mixed motivations for its likely absence are relevant. Perhaps "possession is nine-tenths of the law," but contract law is wholly or "100%" law, and hence Defendant's "90%" by hiding might perhaps earn an "A-minus" or "nice try" but would fall short of what law requires.

[14] So easy — tentatively identifying the Site and its vicinity took a few hours of web-surfing— that Intervenor could not believe Intervenor would have been first to so observe and was "suspicious" that there had to be more to the Quest.  Evidence in Filings shows just how much more there was.

[15] cognizable (adj.) cog·ni·za·ble | \ ˈkäg-nə-zə-bəl, käg-ˈnī- \ 1: *capable of being judicially heard and determined*, a cognizable claim 2: *capable of being known*, cognizable events.  *In* Merriam-Webster.com. *Retrieved March 1, 2020, from https://www.merriam-webster.com/dictionary/cognizable*

31. Intervenor thus claims in brief summary, as detailed in the Filings and herein, and by relying on the Clues and Hints and other public information, plus the memoir illustration, to have **solved the Quest and proved it solved by identifying the Site, demonstrably and with copious written and visual evidence including the Visual, rather than by finding the Box,** which is the contractual consideration, not the "solution."

32. Intervenor admits that Defendant publicly and consistently promoted the Quest in interviews, videos, articles, at least one more book, and otherwise, including recently.[16]

33. Intervenor admits that Defendant publicly and consistently, and at least once through a credible third party, represented or affirmed the real existence and substantial nature of the Box in itemized terms,[17] as weighing between 40 and 45 pounds and containing gold, coins, gems, artifacts, a manuscript autobiography, and other items of tangible value, and to be available as a reward targeted to the specific individual solving the Quest.

34. Intervenor claims that the Box plays a familiar role in the Quest similar to a "McGuffin," or a real object in a movie or a book functioning to trigger the plot, like the spectacular "Ark of the Covenant" in the popular 1981 feature film *Raiders of the Lost Ark*;[18] with said "McGuffin" neither defined nor understood to be a fake, illusory, or purely metaphorical object, but rather a real object worthy of performance (whether stage-dramatic or real); in this case, real consideration for the real act of solving.

---

[16] Gray, Geoffrey; *Journal of Alta California*, November 25, 2019, https://altaonline.com/forrest-fenn-2-million-treasure-in-the-rocky-mountains/. Also, a casual search of a leading online retailer appears to show that the memoir and a companion book are in stock, new, at retail for over $60 and over $90.

[17] Though multiple examples exist, again, see Burnett, John; NPR, March 3, 2016, *Id.*

[18] With no Ark, who would see the film; with no Box, who would participate in the Quest?

35. Intervenor admits that about three years elapsed, while performing Quest work in a portion of Intervenor's spare time, and that perhaps six exploratory visits only to the Site and its vicinity but nowhere else were performed in the Quest context, between tentative identification of the Site by using as a starting point the online work of a former Quest participant[19] who had met with Defendant, indeed choosing that work as that starting point by virtue of the palpable and visible interpersonal connection that that participant had with Defendant; and April 2019 discovery of the Visual, whose landscape component was photographed in August 2018.

36. Intervenor claims as part of the evidence in the Filings, and with the Site located in Colorado, that Defendant references its state seal and its motto, *Nil sine numine* (from Virgil's *Aeneid*) or "Nothing without the will of the deity," in a way appearing to identify with the motto — with Defendant in the "deity" role.

37. Intervenor admits that having failed, even by using Arizona's motto *Ditat deus* or "God enriches" as a riposte to motivate Defendant to collaborate,[20] Intervenor here aims to bring contract law to bear on Defendant.

38. Intervenor claims that Defendant might not have believed such a creative and tough Quest with such a devious twist ever would be solved, ***or might not have anticipated that any searcher would have the grit and fortitude to persist at the Site absent the Box***; and further might not have believed the solver or Intervenor could hold Defendant accountable to law; but whatever Defendant's assumptions or anticipations or the literary

---

[19] Pam Shetron, of North Carolina, whose work (blog) is no longer found online.

[20] "Meeting of the minds."

merit of Defendant's creative reference to self-deification, neither pretending to be a god nor any other excuse exempts Defendant from contract law or its just consequences.

39. Intervenor claims that no principle invalidating a contract would seem applicable, and that Defendant's anticipated defenses, for example: (i) (admittedly) Box non-possession by Intervenor, as (allegedly) nonperformance by Intervenor rather than withholding by Defendant, (ii) evidence of Box presence at a location other than the Site as *Box whereabouts are irrelevant to performance* by solving;[21] (iii) (allegedly) no "meeting of the minds" because of *Defendant's unreasonably refusing a meeting*, or (iv) (allegedly) that the Quest was intended as a recreational public pastime[22] with no real reward or with one somehow wholly at Defendant's discretion as if to rubbish the contract by whim, rather than clearly having communicated a specific reward of the Box; would be feeble — indeed would be shameful, with respect to Defendant's public statements — and would represent self-serving contrivances that contract law exists in part to deny.

40. Intervenor claims that contracts and their enforcement are a key part of the life of law and order as socially expressed, but this Quest — this evidently solved Quest — begets disorder including multiple accidental deaths, rescues, crimes, and cases.[23]

---

[21] Again, the central case issue is that Defendant furnishes no lawful escape from a contractual obligation to deliver the Box merely by providing for a Visual as a marker to substitute, as no reasonable person would insecurely abandon the Box in the outdoors; and then claim Intervenor's contractual nonperformance based on Defendant's having performed that very substitution.

[22] A "thrilling chase" perhaps — true enough for the general public, but not for the individual solving.

[23] "You will study the wisdom of the past, **for in a wilderness of conflicting counsels, a trail has there been blazed. You will study the life of mankind, for this is the life you must order, and, to order with wisdom**, must know." Cardozo, Benjamin; excerpt from speech delivered at commencement of the Albany Law School on June 10, 1925, reproduced on a gigantic plaque on the west side (perhaps as if to say, **"Go West, young man."**) of Boalt Hall.

41. Intervenor admits that since August 2018 Defendant has refused Intervenor's repeated outreach to meet to resolve or to discuss collaboration.

42. Intervenor admits having respected Defendant at all times, never having expressed communications negatively nor having intruded on peace or privacy of Defendant; and to have engaged in such a high level of good faith toward Defendant that Intervenor elected not to sue Defendant until withdrawn or erstwhile Plaintiff's suit enabled Intervenor to Move in Defendant's defense (and in protection of Intervenor's interests with wholly valid cause) while cross-claiming, thus emphasizing real alignment between Defendant and Intervenor — as a contract would imply — despite Defendant's efforts constructively to deny that alignment as noted herein and by other forms of "stonewalling."

43. Intervenor admits that during a phone call with Defendant on December 9, 2019, to confer regarding the Motion, Defendant asked Intervenor about "motivations," but curiously did not question Intervenor's claims to have solved the Quest.

44. Intervenor claims that Defendant arbitrarily might define "solving" not only as "performing so as to complete the Quest by identifying and evidencing its Site" but also as "being socially liked by Defendant" or having the social or personal life profile subjectively to motivate Defendant to deign to concede;[24] but in contract law as applicable in the specific context described herein, Defendant's social rejection or personal dislike of Intervenor, even hypothetically, is not a defense or excuse for

---

[24] A remarkably poorly fitting profile of Intervenor might read as follows: "The guy I hope finds my treasure is a redneck from Texas who's lost his job, with a pickup truck and 12 kids and a wife to support." — Defendant, in response to rescue efforts on behalf of a missing Quest participant whose mortal remains subsequently would be found, while also rejecting responsibility, to Stolley, Richard; *People*, Feb. 10, 2016; https://people.com/celebrity/author-forrest-fenn-talks-about-missing-treasure-hunter/.  While Defendant may socialize as he chooses, Defendant may not lawfully choose freely to evade contractual obligation on grounds of ***subjectively disliking the performing party.***

reneging on the contractual consideration, and that "meeting of the minds" between

Intervenor with Defendant evidences as performance detailed in Filings and herein.

45. Intervenor claims that Defendant committed his public reputation for ten years not only

to the Quest, but also to its incompletion and indefinite perpetuation and to a large public

following of participants who socially bonded partly over its futility; and judgment

against Defendant, with requested relief, might be required so as to give Defendant an

exit equally inescapable, publicly palatable, and compatible with personal pride.

46. Intervenor claims, respectfully to Defendant and in passing, that the amazing Quest is a

major modern literary masterwork in alternative form, as evidenced in the Filings, and

also represents a key part of Defendant's life legacy, to be treasured accordingly.

47. Intervenor claims that *as the Quest has one unique solution, this unique case*

*represents the Court's unique chance* to address the recurring, sometimes pressing,

often negative issues the Quest poses; or alternatively, by not addressing, to fuel Quest

prolongation with indefinitely destructive consequences.

48. Intervenor respectfully asks the Court not to be "fooled" or "hoodwinked," as so many

Quest participants appear to be, by the Box as a "McGuffin," and under contract law to

call what appears to be Defendant's final available bluff, observing that otherwise, and

particularly in the Tenth District, "it's the Wild West out there."[25]

49. Intervenor seeks declaratory judgment against Defendant under 28 U. S. C. 2201 and

2202.

---

[25] **Humor aside, Box whereabouts are not only claimed but also are evidenced to be irrelevant to performance.** Defendant producing even irrefutable evidence that the Box is elsewhere than at the Site would not be a defense — indeed, would amplify, by manifest determination to evade, Intervenor's claims of unlawfully withheld consideration.

50. In remedy more generally, a valid purpose of remedy would be to make Intervenor whole with respect to the contract.  Whether by implied unilateral contract-in-fact, or (as once expressed) "contract-in-law" or unjust enrichment, Intervenor performed by identifying and proving the Site by visually connecting it to Defendant's memoir, *with no other action to perform to satisfy the contract, including Box discovery or any other illusory form of manipulatively alleged requirement of self-help to the withheld consideration.* Intervenor also career-diverted, at a significant pay and seniority cut, and relocated so as to create good-faith Quest solution development and conservation context as detailed in the Filings.  While developing projects often incur risks, Defendant could have chosen to fulfill earlier.  Protracted failure to fulfill imposed real costs on Intervenor.  Several concepts might apply in remedy, with further details found in the Prayer for Relief:

1.  The compensatory general damages concept in common law might neatly converge with the specific performance concept in equity.

2.  A simple coercive remedy of fulfillment by Box award also might be congruent, aligning restitution remedy with Intervenor's legitimate expectation interest.

3.  An appropriate alternative remedy of liquidated damages would be easily estimated and computed by notorious itemization, including photographs, of Box contents.

4.  An appropriate non-alternative or additional remedy of compensation for time and/or lost wages during Intervenor's period of career diversion, coinciding with Defendant's refusing to meet and resisting contractual compliance, also would be easily and reasonably calculated.  Such a monetary award might enable Intervenor more time and latitude in determining best conservation plans for the Box.

AS AND FOR A SECOND CROSS-CLAIM

51. Alternatively, Intervenor seeks judgment against Defendant that Defendant violated an implied unilateral contract in fact[26] existing by the following standards as expressed through Intervenor's and Defendant's public communications and actions:

1. Unambiguous offer — Defendant's offer include communications, commitment or binding intent, and certainty or definite terms. It is a promise to entitle or pay (*for example, the poem's final line is "I give you title to the gold"*) conditioned on *action* (notoriously represented as solving the Quest). Despite wide participation, the offeree, though unidentified until the Quest is solved, is not "the public" but is Intervenor, the specific or uniquely emergent solver from among the public.

    1. Communication: Defendant commercially sold the Quest, including the poem, wrapped in a memoir, after paying an accomplished artist to illustrate it, including half of the Visual: one illustration in the memoir was secretly key, not to solving, but to evidencing the solution. Quest appeal significantly boosted the value of an otherwise pedestrian memoir, even before articles, videos, interviews, other books, and more emanated as Defendant's fame grew over an uninterrupted ten-year promotional span. Public interest was clearly linked to the Box, and key information eventually reached the web, but Defendant's copious, notorious Quest communication began for profit.

---

[26] A unilateral contract is created by an offer that can only be accepted by performance, in which an offeror, the only party with a contractual obligation, promises to pay after the occurrence of a specified act. By no standard or precedent — whether once performance has begun, or after it is completed — is such a contract in this case's circumstances revocable, as with the Quest solved, Intervenor has met the most penalizing standard.

2. Commitment: As noted, consistent conduct of Defendant in promoting and in publicly appearing shows commitment.  The Quest is not merely a generic invitation to the public to recreate outdoors in some region, like a National Parks brochure.  It is a clear offer, of the Box, targeted to the unique solver regardless of means of delivery (outdoor find, title transfer, etc.), but structured in a way motivating many people to explore the outdoors in pursuit in incorrect, but not necessarily deceptive, presumption of fantastic outdoor self-discovery of the Box. Defendant unwaveringly established the Box as the definitive reward for solving the Quest for a Site plus a successful search, which turns out to yield a Visual. Intervenor plainly evidences having done both, and thus having fulfilled.[27] Though many searches, by many participants, also like Intervenor found no Box, absence of the Box is not the true mark of failure.  Box absence is a ***challenge or ruse*** that Intervenor ***overcame***, but it is not a legitimate Quest ***outcome*** to the solver, whether perhaps by circular pseudo-argument ("You don't have the Box, so, you didn't solve") or by unaccountably perhaps victimizing and then victim-blaming the offeree ("Visual?  I guess if you get frustrated long enough and stare into space long enough, you start 'seeing things!'  Too bad you didn't see the Box — so, it's still 'out there!'").  Both pseudo-defenses would lamely dodge the satisfied implied unilateral contract-in-fact relationship at the very point of due consideration established by the Visual, or at the proverbial "finish line."

---

[27] Finding a physically abandoned Box would have been great — and is also just a fantasy: "Fulfillment may fall short of expectation.  At least there has been gained a foothold from which occasion can be seized." Cardozo, Benjamin; *Walton Water Co. v. Village of Walton,* 238 N.Y. 46, 50 (1924).

3.  Certainty: No other consideration, other than the Box and its attested contents, for performance was mentioned by Defendant during the Quest.

2. Unambiguous acceptance — by Intervenor's actions or work, over three years between tentatively identifying the Site vicinity and finding the visual, plus the written and other work, and subsequently to "convert" the solution, leading to this case.[28]  Others also worked, but did not solve.  At least four participants or hypothetical offerees died trying, and a fifth nearly died in January as noted herein. Deaths and rescues exemplify wide, serious, undeterred reliance on Defendant's unambiguous offer, not only by Intervenor but notoriously by thousands of others.

3. Mutual intent to be bound — Defendant might not have anticipated that such a tough Quest ever would drive actionable contractual obligation, but neither an unexpected result nor hiding the consideration are valid defenses.  For ten years, Defendant promoted and motivated wide public interest by the chance to earn specific consideration: the Quest is for the Box, not merely recreation, even if many "enjoyed the journey."  *Quest solution detail clearly evidences a firm "meeting of the minds" between Defendant and Intervenor, who unlocked deeply interlinked layers of literary, historic, cultural, and other references while adding a new, fitting layer for conservation by clearly linking the Colorado and Arizona mottos and territorial founding events.  The published Quest is, by intellectual craft and design, a plain product or manifestation of Defendant's mind, and is Defendant's intellectual*

---

[28] "In truth, I am nothing but a plodding mediocrity — please observe, a plodding mediocrity — for a mere mediocrity does not go very far, but a plodding one gets quite a distance. There is joy in that success, and a distinction can come from courage, fidelity and industry." Cardozo, Benjamin; as quoted in *Nine Old Men* (1936) by Drew Pearson and Robert Sharon Allen, p. 221.

*property or mental work as evidenced by commercial publication; and Intervenor,*
*by solving, and by the supporting body of written evidence in Filings and its rich*
*thematic interconnections, clearly completed the tacit "meeting of the minds" —*
*whose locus is the Quest itself — whether or not Defendant is willing to meet.* Any
reasonable person would hold Defendant clearly, consistently *serious* about *the Box*,
being *the reward*, for *solving*.

4. Consideration — the Box and its contents, by Defendant; if necessarily mutual, the
   act of solving and production of evidence, written work, public communication of
   Quest development plans, and more, by Intervenor.

52. Remedy is as above.

## AS AND FOR A THIRD CROSS-CLAIM

53. Alternatively, Intervenor seeks judgment against Defendant that Defendant benefited
    from unjust enrichment, giving rise to cause for restitution regardless of promise.
    Defendant derived net benefit from promoting and selling the Quest in book form, while
    Intervenor expended net time, effort, and money on solving;[29] while also crafting for
    Defendant a publicly communicated, credible draft conservation plan for Quest artifacts
    or Box contents; and offering development of Defendant's artistic and literary legacy.[30]
    Quest solution also upgrades Defendant's notoriously mixed public image, offering
    Defendant a "glorious exit."  As noted, Defendant's rejection of solution based on
    Intervenor's lack of the Box lacks genuine basis, instead having logically circular basis

---

[29] As Defendant acknowledges others have; Defendant to Stolley, Richard; *People*, Feb. 10, 2016; https://
people.com/celebrity/author-forrest-fenn-talks-about-missing-treasure-hunter/.

[30] At a level of detail that only Intervenor, or the solver, credibly or meaningfully could.

itself depending on Defendant's unjust withholding of the consideration, unconscionable by unfair surprise rather than contractual lopsidedness given the focused consistency, notoriety, and timespan with which Defendant established the Box as consideration.

54. Remedy is as above.

## AS AND FOR ALL ABOVE CLAIMS

55. Full details of evidence are presented in the Filings and are incorporated herein by reference.

56. Intervenor has no other adequate remedy at law.

3.   PRAYER FOR RELIEF

Intervenor seeks a judgment declaring that: (a) Intervenor has solved the Quest, by accurately

decoding the poem and by identifying the unique Site by preponderant visual and other evidence;

(b) Intervenor is thus entitled to all rewards promised by Defendant to any individual(s) who

solved the Quest specifically including, but not limited to, beneficial transfer of title to the Box

and its publicly represented contents or full reward plus ready means of securing physical

possession of same, regardless of Box whereabouts; or an alternative equivalent monetary award

to be computed by neutrally, reasonably estimated valuation of the Box including said contents

should the Box be unavailable for whatever reason; (c) Intervenor is entitled to priority and

security for award to survive Defendant such as (for example) attachment or liability of

Defendant's estate, will, trusts, and chattels to any and all such rewards; (d) Intervenor is entitled

to a monetary award reasonably estimated as wages foregone while relocating and career-

diverting in a protracted, unsuccessful good-faith effort to connect with Defendant so as to

resolve the dispute more amicably and collaboratively and without a lawsuit; (e) such other and

further relief as the Court deems just and proper.

Respectfully submitted,

Brian Erskine
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com

## CERTIFICATE OF CONFERENCE

I hereby certify that pursuant to Local Rule 7.1(a) and as detailed above, I have communicated with Defendant's counsel by email and phone, at various times between February 12 and February 25, 2020, concerning the substance and legal basis of the foregoing, including thoroughly detailed contextual clarification of factual evidence. As Plaintiff has consented to withdraw, I have respectfully not burdened Plaintiff with conference.

Brian Erskine
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2020, a true and correct copy of the foregoing, including the cover letter to Chambers and its Exhibit, has been filed with the Clerk of the Court by tracked postal mail and has been served by certified mail, receipt requested, to Defendant's counsel at counsel's public postal address. As Plaintiff has consented to withdraw, I have respectfully not burdened Plaintiff with service.

Brian Erskine
1338 Sabatina Street
Prescott, Arizona 86301-7402
(949) 424-4294
kattigara@gmail.com




**PRIORITY MAIL EXPRESS™**

**UNITED STATES POSTAL SERVICE®**

PRESS FIRMLY TO SEAL

U.S. POSTAGE PAID
PME
PRESCOTT, AZ
85301
AUG 03, 20
AMOUNT
**$26.35**
R2305M148295-10

87102 1007

EE 1787 1187 US

**PRIORITY MAIL EXPRESS®**

**UNITED STATES POSTAL SERVICE®**

### ORIGIN (POSTAL SERVICE USE ONLY)

☐ DPO
☐ Military
☐ DPO

PO ZIP Code — 86301
Scheduled Delivery Date (MM/DD/YY) — 3/3/2020
Postage — $26.35

Date Accepted (MM/DD/YY) — 3/3/20
Scheduled Delivery Time ☐ 10:30 AM ☑ 3:00 PM
Insurance Fee $
COD Fee $

Time Accepted 10:30 ☑ AM ☐ PM
10:30 AM Delivery Fee $
Return Receipt Fee $
Live Animal Transportation Fee $

Weight ___ lbs. ___ oz. ☑ Flat Rate
Special Handling/Fragile $
Sunday/Holiday Premium Fee $
Total Postage & Fees $26.35

Acceptance Employee Initials

**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT) PHONE ( 949 ) 424-4294

B. ERSKINE
1338 SABATINA ST.
PRESCOTT AZ
86301-7402

**TO:** (PLEASE PRINT) PHONE ( 505 ) 348-2000

U.S. DISTRICT COURT
CLERK OF THE COURT
333 LOMAS BLVD NW #270
ALBUQUERQUE NM

ZIP + 4® (U.S. ADDRESSEES ONLY)
8 7 1 0 2 - 2 2 7 4

### DELIVERY (POSTAL SERVICE USE ONLY)

Delivery Attempt (MM/DD/YY) Time ☐ AM ☐ PM
Employee Signature

Delivery Attempt (MM/DD/YY) Time ☐ AM ☐ PM
Employee Signature

LABEL 11-B, OCTOBER 2016
PSN 7690-02-000-9996

**3-ADDRESSEE COPY**

RECEIVED
DISTRICT COURT
ALBUQ...
04 ...
MATTHEW J. ELFERS
CLERK

✦ Money Back Guarantee for U.S. destinations only.

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

USED INTERNATIONALLY,
CUSTOMS DECLARATION
...L MAY BE REQUIRED.

**EMS**

July 2013 OD: 12.5 x 9.5

10001000006

**PRIORITY MAIL EXPRESS™**
FASTEST SERVICE IN THE U.S.

PRESS FIRMLY TO SEAL